Eastern District of Kentucky
**F I L E D**
JUL 0 2 2014
AT LEXINGTON
ROBERT R. CARR
CLERK U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
AT LEXINGTON

DARRELL G. COFFEY,

    Plaintiff,

V.

CAROLYN W. COLVIN, Acting Commissioner of Social Security,

    Defendant.

CIVIL ACTION NO. 5:13-177-KKC

**OPINION & ORDER**

\*\*\* \*\*\* \*\*\*

The plaintiff, Darrell G. Coffey, brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of an administrative decision of the Commissioner of Social Security denying his claim for a period of disability and disability insurance benefits. The Court, having reviewed the record, will affirm the Commissioner's decision, as it is supported by substantial evidence.

## FACTUAL AND PROCEDURAL BACKGROUND

Coffey filed his claim for benefits on August 16, 2010, alleging a disability beginning on July 22, 2010. His claim was denied initially on September 29, 2010, and upon reconsideration on November 15, 2010. He then filed a written request for a hearing before an Administrative Law Judge ("ALJ"). After the hearing, the ALJ issued an unfavorable decision on October 3, 2011.

At the time of the alleged onset of disability, Coffey was 42 years old and has a limited education. (AR 20). He claims to be disabled due to a combination of physical and mental impairments. In his original request for benefits, Coffey claimed he was disabled due to physical conditions, which included degenerative disc disease, arthritis, high blood

pressure, status post broken right hip, status post head trauma due to a car wreck, and a torn ligament on his right shoulder. (AR 156). After initially being denied benefits, Coffey made further claims that he had mood swings, was stressed, and had difficulty remembering things. (AR 206). Then in a subsequent disability report, Coffey claimed he was forgetful. (AR 214). But when completing his function report, the only difficulties Coffey complained of stemmed from neck and back pain. (AR 185–93).

Coffey testified during the administrative hearing that he suffered from depression, although he had not sought treatment for any mental health problems until shortly before the hearing. (AR 42–43, 48, 61). To this end, Coffey visited the Health Now Clinic on August 23, 2011 and obtained a letter from psychiatric nurse practitioner Deborah Whitehouse. In her letter, Whitehouse stated that the plaintiff reported losing weight, sleep difficulties, and other symptoms indicative of depression. Whitehouse diagnosed Coffey with panic disorder and major depressive disorder. (AR 313). This is the only treatment note from the Health Now Clinic, as Coffey did not seek any treatment for mental health difficulties until just before his hearing.

The record also indicates that Coffey's primary physician, Adam Hall, D.O., never diagnosed him with a mental condition. Dr. Hall's treatment notes indicate that Coffey did not complain of depression, denied any malaise, and stated he was feeling "generally well" other than some poor sleeping and chronic neck and low back pain. (AR 244, 246, 248). The only deviation from these notes is that Coffey indicated to Dr. Hall he had taken a Xanax from his wife after suffering a loss in his family. (AR 244, 246, 248).

In determining whether a claimant has a compensable disability under the Social Security Act (the "Act"), the regulations provide a five-step sequential process which the

ALJ must follow. 20 C.F.R. § 404.1520(a)–(e); *see Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). The five steps, in summary, are as follows:

(1) If the claimant is currently engaged in substantial gainful activity, she is not disabled.

(2) If the claimant is not doing substantial gainful activity, her impairment must be severe before she can be found disabled.

(3) If the claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, the claimant is presumed disabled without further inquiry.

(4) If the claimant's impairment does not prevent her from doing past relevant work, she is not disabled.

(5) Even if the claimant's impairment does prevent her from doing past relevant work, if other work exists in the national economy that accommodates her residual functional capacity and vocational factors (age, education, skills, etc.), she is not disabled.

*Id.*

The burden of proof is on the claimant through the first four steps of the process to prove that she is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 146, n. 5 (1987). If the ALJ reaches the fifth step without finding that the claimant is not disabled, then the burden shifts to the Commissioner to consider the claimant's residual functional capacity, age, education, and past work experience to determine if she could perform other work. If not, she would be deemed disabled. 20 C.F.R. 404.1520(f). Importantly, the Commissioner only has the burden of proof on "the fifth step, proving that there is work available in the

economy that the claimant can perform." *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999).

In this case, the ALJ began his analysis at step one by determining that the claimant has not engaged in gainful activity since July 22, 2010, the alleged onset date. (AR 16). At step two, the ALJ determined that Coffey suffers from the following severe impairments: degenerative disc disease of the lumbar spine with chronic back pain, and degenerative disc disease of the thoracic spine. (AR 16). In the third step, the ALJ found the claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. (AR 17).

At step four, the ALJ found that based on consideration of the entire record including all medically determinable evidence, Coffey "has the residual functional capacity to perform light work as defined in 20 CFR. 404.1567(b) and 416.967(b)." The ALJ further found that Coffey can "perform light work activities with occasional lifting and carrying 20 pounds and frequently 10 pounds; stand and walk a total of six hours in an eight-hour workday; sit a total of six hours in an eight-hour workday; no more than frequent pushing and pulling or use of hand control with bilateral upper extremities; only occasional climbing stairs and ladders and never ladders [sic], ropes and scaffolds; only occasional stooping, kneeling, crouching or crawling." (AR 17). Finally, the ALJ found that Coffey "should avoid concentrated exposure to full body vibration." (AR 17). Under this RFC, the ALJ determined, with the aid of a vocational expert, that Coffey was able to perform past relevant work as a battery assembler. (AR 20).

Although the ALJ concluded that Coffey could perform past relevant work, he went on to step five and determined that, as an alternative finding, there are other jobs that exist in significant numbers in the national economy that the claimant can perform. (AR 20). This

4

conclusion was based on consideration of the claimant's age, education, work experience, and residual functional capacity as well as the testimony of the vocational expert. (AR 20–21).

The Appeals Commission subsequently denied Coffey's request for review on May 1, 2013. Coffey has exhausted his administrative remedies and filed a timely action in this Court. This case is now ripe for review under 42 U.S.C. § 405(g).

## GENERAL STANDARD OF REVIEW

The decision of the Commissioner must be supported by substantial evidence. *Varley v. Sec'y of Health and Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987). Once the decision of the Commissioner is final, an appeal may be taken to the United States District Court pursuant to 42 U.S.C. § 405(g). Judicial review of the Commissioner's decision is restricted to determining whether it is supported by substantial evidence and was made by proper legal standards. *See Cullip v. Sec'y of Health and Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). "Substantial evidence" is defined as "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* In reviewing the decision of the Commissioner, courts are not to conduct a *de novo* review, resolve conflicts in the evidence, or make credibility determinations. *See id.* Rather, the Court must affirm the Commissioner's decision so long as it is supported by substantial evidence, even if the Court might have decided the case differently. *See Her*, 203 F.3d at 389–90. However, the Court must review the record as a whole, and must take into account whatever in the record fairly detracts from its weight. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

**ANALYSIS**

Coffey contends that the ALJ committed two general errors in determining the severity of his impairments. First, he states that the ALJ "erred as a matter of law in finding that the Plaintiff's depression and panic disorder were non-severe impairments, and he failed to properly evaluate [Coffey's] claims of disabling pain." (DE 10, at 5). Second, Coffey argues that the ALJ failed to fully develop the record. The Court will address these claims in turn.

**1. The ALJ's Evaluation of Coffey's Alleged Impairments Is Supported By Substantial Evidence**

Coffey contends that the ALJ erred in his "failure to find the depression, panic disorder and illiteracy to be severe impairments." (DE 10, at 9). Coffey points to several places in the record he believes sufficiently established that these alleged impairments are severe including:

> • A visit to the Doctor's Pain Management and Injury Center on November 16, 2010, where he was prescribed Xanax and Soma;
>
> • A prescription from his family doctor in January 2009 for Xanax;
>
> • A visit with psychiatric nurse practitioner Deborah Whitehouse during which Ms. Whitehouse stated that Coffey lost 30 pounds within the last six months and had significant sleep problems;
>
> • Ms. Whitehouse diagnosing Coffey with major depressive disorder and panic disorder and recommendation that he restart his Xanax;
>
> • Coffey's testimony during the hearing that he believed panic and depression were severe problems in his life affecting sleep and ability to engage in activities; and
>
> • Coffey's testimony during the hearing that he cannot read or write.

6

(DE 10, at 5–7).

A claimant's "symptoms, such as pain, fatigue, shortness of breath, weakness, or nervousness, will not be found to affect your ability to do basic work activities unless medical signs or laboratory findings show that a medically determinable impairment(s) is present." 20 C.F.R. §§ 404.1529(b), 416.929(b). An impairment is not severe if it does not significantly limit a claimant's ability to do basic work activities. 20 C.F.R. §§ 404.1521(a); 416.921(a). Moreover, "statements about your pain or other symptoms will not alone establish that you are disabled; there must be medical signs and laboratory findings which show that you have a medical impairment(s) which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all of the other evidence . . . would lead to a conclusion that you are disabled." 20 C.F.R. §§ 404.1529(a); 416.929(a).

The ALJ determined that "[t]here is no evidence of a medically determinable mental impairment. The claimant alleges he has a difficult time focusing and remembering; however, there is scant evidence of record." (AR 19). This finding is supported by the substantial evidence. Coffey did not list any mental impairments on his application for benefits, and described pain as the only limiting impairment in his own description of his functional capacity. (AR 185–93). His claim of panic disorder and depression arose only right before his hearing before the ALJ, and he shows no history of ever having been treated for mental health problems. And although Coffey contends that this was due to limited financial means, treatment notes from his primary care physician Dr. Hall indicate that he had no reportable mental health problems. (AR 244–52) (indicating normal mental health).

The only evidence that Coffey relies on to demonstrate a mental health impairment is his own testimony, one visit to a psychiatric nurse practitioner where she diagnosed him with depressive disorder and panic disorder, and a prescription for Xanax. None of this necessarily indicates an *impairment. See Young v. Sec'y of Health & Human Servs.*, 925 F.2d 146, 151 (6th Cir. 1990) ("This court has determined that a claimant must do more to establish a disabling mental impairment than merely show the presence of a dysthymic disorder."). Whitehouse did not conduct any clinical or psychological tests to determine whether Coffey is *impaired.*

The ALJ correctly noted that Coffey has not presented any medical evidence demonstrating he has a mental health condition arising to the level of impairment. The fact that he has received a prescription for Xanax, in the past, and had a psychiatric nurse practitioner diagnose him with depressive disorder and panic disorder[1] is not enough. *See* 20 C.F.R. §§ 404.1513(a), 416.913(a) (indicating that a nurse practitioner is not an acceptable medical source for establishing an impairment). The ALJ's determination that Coffey does not suffer from a mental health impairment is supported by substantial evidence in the record. *See Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir. 1990) (explaining that a claimant must demonstrate his mental health impairment with "medical evidence consisting of clinical signs, symptoms and/or laboratory or psychological test findings") (quoting 20 C.F.R. Pt. 404, Subpt. P, App. 1). Accordingly, the ALJ did not need to account for any mental limitations in determining Coffey's RFC, and no error was made.

Coffey also contends that the ALJ erred in failing to consider his complaints of neck pain and illiteracy. (DE 10, at 5–7, 9). But Coffey fails to develop these arguments with any

---

[1] Notably, Coffey relies heavily on the note by APRN Deborah Whitehouse, such as when he stated that he had lost thirty pounds in the last six months and had significant sleep disorders. But Whitehouse notes only the information that Coffey related to her. *See* AR 313 ("He reports a loss of 30 lbs in the last six months. He has severe pain and sleep disturbance.").

8

particularity. This court will not "formulate arguments on [Coffey's] behalf, or [ ] undertake an open-ended review of the entirety of the administrative record to determine (i) whether it might contain evidence that arguably is inconsistent with the Commissioner's decision, and (ii) if so, whether the Commissioner sufficiently accounted for this evidence." *Hollon ex rel. Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 490–91 (6th Cir. 2006).

As to the alleged error regarding neck pain, Coffey makes only a passing remark in his brief without providing any support as to how the ALJ erred. The ALJ discussed Coffey's neck pain and determined that it did not impose a significant limitation on his ability to work. (AR 18–19). Coffey's general claim that the ALJ erred by failing to consider his neck pain lacks merit, and the Court will not take it upon itself to conduct an exhaustive review of the record to determine, on Coffey's behalf, whether any specific errors were made.

Similarly, although Coffey repeatedly states that the ALJ erred when he failed to find his panic disorder and depression severe impairments, Coffey makes only brief remarks about illiteracy. He states that during the hearing Coffey discussed being illterate and includes illiteracy within a conclusory recitation of the ALJ's errors (arguing that the ALJ erred when he "fail[ed] to find the depression, panic disorder and illiteracy to be severe impairments"). (DE 10, at 7, 9). Like his references to neck pain, Coffey never points to objective evidence demonstrating the ALJ's error, and perhaps more significantly, never addresses the inconsistency in his ability to fill out his paperwork despite being illiterate.

For the above-stated reasons, the ALJ did not commit error in determining that his mental impairments and neck pain were not severe impairments, and the ALJ's finding is supported by the substantial evidence.

## 2. The ALJ Did Not Fail to Fully Develop the Record

Coffey's second alleged error is that the ALJ failed to fully develop the record. An ALJ must conduct a full inquiry, but a "[f]ull inquiry does not require a consultative examination at government expense unless the record establishes that such an examination is necessary to enable the [ALJ] to make the disability decision." *Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 214 (6th Cir. 1986) (internal quotations omitted). The decision to order further consultative examinations is within the discretion of the ALJ, 20 C.F.R. §§ 404.1517, 416.917, and the regulations "simply grant [the ALJ] the authority to [refer a claimant to a consultative specialist] if the existing medical sources do not contain sufficient evidence to make a determination." *Id.* (noting that an ALJ is not *required* to order a consultative exam). In this case, the ALJ did not have a duty to develop the record any further with regard to Coffey's alleged mental impairments, as the record was void of any evidence that Coffey suffered from a mental impairment impacting his ability to do work. *See Ball v. Sec'y of Health and Human Servs.*, 931 F.3d 893, 1991 WL 66051, at *4 (6th Cir. 1991) (unpublished). Additional consultative examinations are not necessary when nothing in the record indicates that the claimant's residual functional capacity is affected by an impairment and the claimant himself has failed to allege it. *Id.* Accordingly, the ALJ did not abuse his discretion in rejecting Coffey's request for psychological consultations.

In addition to the psychological examinations, Coffey contends the ALJ abused his discretion in rejecting his request for an all-systems exam. During the hearing, the ALJ rejected the request because Coffey already had a recent MRI on the record and he did not believe another one would necessary. The ALJ explained that the MRI's address the issues Coffey complains of and "they're pretty determinative of what the problem is." (AR 31). Coffey contends that the ALJ "play[ed] doctor" when he determined that the medical record

was sufficient, but this is exactly the kind of finding the ALJ is required to make. *See* 20 C.F.R. §§ 404.1545(a)(3); 416.945(a)(3) (explaining that the ALJ is responsible for determining when consultative examinations might be necessary to develop the record). Moreover, Coffey offers the Court no specific reason as to why the evidence on the record was insufficient. He instead states that "[a]lmost every single disability claim results in a consultative examination for evaluation purposes," and wonders why his case should be any different. (DE 10, at 12). To suggest that an ALJ should order consultative exams based on an anecdotal aggregation of other cases defies logic: it is the responsibility of the ALJ to determine what is necessary in *this* case, which is unrelated to what might have been necessary in *other* cases. The ALJ did not err in rejecting the claim for additional consultative exams, and his decision in denying Coffey's claim for benefits is supported by substantial evidence in the record.

\* \* \*

For the reasons stated above, **IT IS ORDERED** that:

1. The plaintiff's motion for summary judgment (DE 10) is **DENIED**;

2. The defendant's motion for summary judgment (DE 11) is **GRANTED**;

3. The decision of the Commissioner is **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g) as it was supported by substantial evidence and was decided by proper legal standards; and

4. A judgment will be entered contemporaneously with this order.

Dated this 2nd day of July, 2014.



Signed By:
Karen K. Caldwell
United States District Judge